### In re GARFINKEL et al.

(Circuit Court of Appeals, Second Circuit. December 18, 1922.)

No. 79.

Bankruptcy ⬅140(2)—Representations as to solvency held not such as to entitle seller to reclaim property.

A statement by a member of bankrupt firm, at the time of purchase of goods on credit, that two months before they took in a new partner with fresh capital and that an inventory then made showed net assets above liabilities of over $50,000, *held* not such a false representation of present worth as to entitle the seller to reclaim the goods sold.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Philip Garfinkel, Louis Waldman, and Aaron Siegelman, partners, bankrupts. Abraham Gash appeals from order of District Court. Affirmed.

Appeal from an order of the District Court for the Southern District of New York, (1) denying the application of Abraham Gash, to confirm the report of a special master allowing Gash's petition for the reclamation of 30 cases of olive oil, and (2) denying the petition of Gash in that regard.

Berg & Berk, of New York City (Max Berg, of New York City, of counsel), for appellant.

Addison S. Pratt and Herman J. Witte, both of New York City, and Walter Burt, in pro. per.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The bankrupts were partners engaged in business as wholesale and retail grocers, conducting a chain of retail

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

grocery stores; their principal store and warehouse being located at Portchester, Westchester county, N. Y. Gash, the claimant, is a whole-sale dealer in olive oil and other grocery merchandise.

On March 5, 1920, Waldman, one of the partners, filed in the District Court for the Southern District of New York a voluntary petition in bankruptcy praying for an adjudication of himself and his partnership as bankrupts. The transaction in respect of which inquiry is now made took place on or about February 24th or February 25th or, in other words, about a week before the filing of the voluntary petition. Gash testified that he had done business with Garfinkel, when the latter was in business alone at Yonkers, and also with Waldman, when the latter was likewise in business alone at Portchester, and that he thereafter was constantly doing business with the partnership and had sold to the partnership olive oil and cotton oil about January 4, 1920, the bill for which was $304.50, which amount was unpaid at the time of the conversation infra of February 24th or 25th.

At that time, Garfinkel called at Gash's place of business in regard to the purchase of the olive oil sought to be reclaimed; this appearing to be the manner in which orders were placed by the bankrupts. Gash looked up the account and saw that the partnership owed the $304.50, supra, and told Garfinkel that his credit was up and that he could not get any more until he paid up this $304.50 and that the intended order was beyond the amount which Gash had agreed to sell on credit. Thereupon, according to Gash, Garfinkel stated:

"Mr. Gash, you know we took in a new partner, and he brought us in $25,000. We take an inventory at that time he come in, we are worth now over $50,000 above all liabilities. We are now entitled to larger credit than before. Everybody else gives us more credit than before too."

Upon further inquiry by Gash, he was informed by Garfinkel that the last inventory was taken when the new partner (Siegelman) invested the $25,000 and became a member of the partnership. The effect of further testimony by Gash was that he was informed that the new partner had been taken into the firm some two months previous and it was then that the inventory which showed $50,000 above all liabilities was taken. It was also clear from the testimony that Gash knew that Garfinkel and Waldman were expecting to get in a new partner and that Gash did not doubt the truth of the statement that there was a new partner and that he had put in new money. Without further detail, it is apparent from the testimony of Gash that there was no representation by Garfinkel as to present worth and that the sole representations (unattacked as to their truthfulness) were that a new partner had joined the firm some two months prior to February 24th or 25th, had contributed $25,000, and that, at that time, an inventory had been taken which showed $50,000 net worth. The only other witness called was one Penn, the general office manager of Gash in charge of credits. He testified that Garfinkel had stated that "they got in a new partner who had invested $25,000 in cash, and at that time the assets above all liabilities were over $50,000." The expression "at that time," when taken in conjunction with the testimony of Gash, must be construed as referring to the condition of the business of the bankrupts at the time

the new partner invested the $25,000, and became a member of the bankrupt firm. In any event, if there is any doubt as to the construction of the testimony, it did not meet the burden of proof which claimant was required to carry successfully before he could establish his claim. It is plain as a fair inference from the testimony of Gash that he did not rely upon any representation as to present worth and that Garfinkel did not make any such representation. The circumstances were such that the statement of Garfinkel cannot be construed as a continuing representation to justify the conclusion that Gash relied upon any representation as to the then financial condition of the new bankrupt firm on February 24th or 25th.

It is sufficient to cite In re B. & R. Glove Corporation (C. C. A.) 279 Fed. 372, as a recent review of some features of this recurring question of representations as to financial condition by failing debtors.

We take this opportunity of expressing gratification in respect of the brief record and briefs of both counsel, as well as of the fact that counsel, who argued the case for the trustees, is himself one of the trustees and by this course has saved the estate the expense of counsel fees in a proceeding which we think presents a single and simple question.

Order affirmed with costs.